# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

SUSAN N. BURGESS, Esq.,

                                        Plaintiff,

                -vs-

HARRIS BEACH PLLC; RAYNE HAMMOND
BENZ; PITTSFORD CENTRAL SCHOOL
DISTRICT; BOARD OF EDUCATION OF THE          DECISION and ORDER
PITTSFORD CENTRAL SCHOOL DISTRICT;
JOHN P. SCHIESS, IN HIS PERSONAL AND            07-CV-6281-CJS
OFFICIAL CAPACITIES; BARBARA SHAPIRO,
HER PERSONAL AND OFFICIAL CAPACITIES;
AND PITTSFORD DISTRICT TEACHERS
ASSOCIATION,

                                        Defendants.

## APPEARANCES

For Plaintiff:                          Susan N. Burgess, Esq. *pro se*
                                        13 Market Street
                                        Brockport, NY 14420

For Defendants Harris Beach PLLC and    David Rothenberg, Esq.
Rayne Hammond Benz, Esq.                Geiger and Rothenberg, LLP
                                        45 Exchange St Suite 800
                                        Rochester, NY 14614

For Defendants Pittsford Central School    Peter John Glennon, Esq.
District; Board of Education of the Pittsford    Nixon Peabody LLP
Central School District; and John P.    Clinton Square
Schiess, in His Personal and Official    P.O. Box 31051
Capacities                              Rochester, NY 14603-1051

For Defendants Barbara Shapiro, in Her    Kevin H. Harren, Esq.
Personal and Official Capacities and    New York State United Teachers
Pittsford District Teachers Association    Office of General Counsel
                                        800 Troy-Schenectady Road
                                        Latham, NY 12110-2455

## INTRODUCTION

Plaintiff has alleged that Defendants engaged in "a calculated scheme . . . to frame plaintiff before this Court and before an attorney grievance committee and to conceal their actions from plaintiff and the Court." (Compl. ¶ 1.) Her complaint raises ten causes of action under State and Federal law. Now before the Court are Defendants' motions (Docket Nos. 9, 13 & 14) to dismiss the complaint. For the reasons stated below, Defendants' motions are granted in part, the federal question claims are dismissed, and the Court declines to exercise jurisdiction over the remaining state law claims.

## BACKGROUND

This lawsuit is before the Court on Federal Question, 28 U.S.C. § 1331, and Civil Rights, 28 U.S.C. § 1343, jurisdiction. The complaint also contains causes of action plead under New York law, for which the Court has supplemental jurisdiction. 28 U.S.C. § 1367. With regard to the municipal defendants, Plaintiff alleges that she "timely served Notices of Claim upon the District and the Board." (Compl. ¶ 23.) She also states that she was "deposed pursuant to New York General Municipal Law § 50-h on November 13, 2006, and this action is timely pursuant to New York General Municipal Law § 50-i (1) (c)." (*Id.*) Paragraphs 24 through 73 allege the facts underlying all the causes of action and are reproduced here for convenience:

24. Plaintiff commenced in U.S. District Court, Western District of New York, on behalf of a client, 03-cv-6541 in 2003. At all times relevant to this complaint, Judge Michael A. Telesca was the federal judge assigned to 03-CV-6541.

25. Upon information and belief, prior to going to work for Harris Beach in 2003, defendant Benz worked as a law clerk to Judge Telesca.

26. During discovery in 03-cv-6541 it was necessary for plaintiff to file three motions to compel relevant District employment records because of Benz's and the District's failure to produce such records voluntarily or completely.

27. After obtaining some employment records following these motions, and in the course of investigating her case, on February 22, 2006, plaintiff showed a female teacher at the District (hereafter "Doe"[1]), her employment files, which plaintiff had obtained in discovery and which she had permission to show Doe. Doe was flabbergasted by memoranda and e-mails in an "investigation" file on her of which she was unaware. The memos and e-mails were by and between her building principal and defendant Schiess.

28. Doe was unaware that the District had any problems with her performance and expressed to plaintiff that, based on what she saw in her files, she believed the District was fabricating a disciplinary case against her.

29. Thus, Doe was a particularly relevant witness for plaintiff in 03-cv-6541 because of similarities between her employment and the claims plaintiff's client was asserting in 03-cv-6541, including the client's claim that the District and Schiess had fabricated the reason for her termination.

30. Doe was distraught and asked plaintiff for legal advice. Plaintiff advised her briefly that she could do nothing and see what happened, go to the union, or hire an attorney. Plaintiff stated that, if she were the attorney, she would not sue the District because no employment action had been taken but, rather, she would write a letter to the District about the contents of Doe's employment files. After a brief discussion with her boyfriend, Doe decided to wait and see what happened.

31. On March 2, 2006, Doe's union president, defendant Shapiro, called Doe and told her she was required to meet with her building principal the following Monday and was to bring a union representative with her. Doe construed this directive to mean that she was going to be disciplined in some way. She told Shapiro that plaintiff had shown her her employment records, that there were things in them that were not true, and that if the District continued trying to discipline her she was going to get a lawyer.

32. Upon information and belief, that same day, Shapiro, acting as an agent for the District rather than as an advocate for members of the teachers union, disclosed the substance of her call to Doe with Schiess and/or Benz. Upon information and belief, Schiess instructed Shapiro to call Doe back and cancel the directive that Doe meet with her principal.

---

[1]The name of the teacher is known to plaintiff all defendants in this case by virtue of their involvement in 03-CV-6541. Certain documents filed in 03-cv-6541 that contain the teacher's name have been redacted as to her name and have substituted "Ms. Doe" for the teacher's name.

33. Upon information and belief, thereafter, still on March 2, 2006, Schiess and/or Shapiro disclosed to Benz that Doe learned from Burgess the contents of the investigatory file and thus the disciplinary charges the District was building against Doe and that Doe was upset by what she had seen.

34. Soon after, that same day, Benz accused plaintiff of improperly soliciting multiple District employees, without mentioning Doe. Benz accused plaintiff of using District records obtained in discovery for her "own personal rainmaking efforts." Benz alleged that plaintiff was trying to convince District employees to retain her and sue the District. Benz claimed she learned of the alleged solicitation of multiple employees from a "confidential source" whom she did not name. Benz made these allegations with knowledge that plaintiff had a right and obligation to interview District employees who might be witnesses in 03-cv-6541, and with knowledge that she had given plaintiff written permission to show employment files obtained in discovery to the District employees to whom they pertained.

35. Plaintiff denied these unsupported and outrageous allegations. To prevent plaintiff from speaking to Doe again or from speaking to any other District employee, and to interfere with plaintiff's ability to investigate and pursue her client's case in 03-cv-6541, on March 3, 2006 Benz faxed a letter to Judge Feldman making the same vague and unsubstantiated accusations, again based on a "confidential" phone call from a District employee on March 2, 2006. Judge Feldman gave Benz until March 10, 2006 to file a motion for injunctive relief establishing her claims, and plaintiff challenged Benz emphatically to include affidavits from allegedly solicited employees.

36. Knowing Benz could not substantiate her accusations of solicitation and abuse of discovery, defendants or some of them, specifically Benz, Schiess, and Shapiro, devised a plan to frame plaintiff with the court and to interfere with her ability to investigate her case further. Defendants' plan was designed not only to prevent plaintiff from having further contact with Doe, who was upset with the District and had expressed that she might sue the District, but to prevent plaintiff from speaking to any other District employee who might either have information that would further plaintiff's case in 03-cv-6541 or who might have claims of their own against the District.

37. To further this scheme, Shapiro, Benz, and Schiess acted in concert to convince Doe that plaintiff had upset her wrongfully by misrepresenting to her that she had a problem with her employment, that plaintiff deliberately had misinterpreted to Doe the contents of her employment files for the purpose of soliciting Doe to sue the District, that plaintiff was not allowed to show Doe her files or even talk to her and was wrong to have done so, and

that plaintiff had wrongfully and unlawfully misused Doe's employment records and wrongfully and unlawfully tried to solicit business from Doe.

38. To carry out their scheme, Shapiro and Benz engaged in five conversations with Doe in which they disparaged plaintiff to Doe and, at the same time, assured Doe that she had nothing to fear with respect to the status of her employment, blaming plaintiff for having misrepresented her employment status to Doe. The contents of Doe's files showed, however, that Schiess and Doe's building principal were compiling evidence against Doe for the purpose of bringing disciplinary charges against her under Education Law § 3020-a.

39. Shapiro, Benz, and Schiess knew that Doe trusted Shapiro not only as Doe's union representative but as a personal friend.

40. Specifically, on March 7, 2006, Shapiro said to Doe, among other things, that plaintiff "really has overstepped her bounds;" that Shapiro was "very angry" because plaintiff "implied things" and "the things she said were very inflammatory, very upsetting to you, and certainly in my view was inappropriate;" that plaintiff "should never even have had access to, to any of your information;" that Shapiro had "had registered a complaint with the bar association" about plaintiff; that Shapiro had received "tons" of "calls from other [union] members" who were "very upset;" that the District (Doe's employer) felt that plaintiff had "really overstepped her bounds by actually calling people" and that plaintiff 'was never supposed to contact" employees or show them their employment records; and that the District was "trying to ascertain whether or not they have legal grounds against" plaintiff because "she's overstepped her bounds."

41. Shapiro told Doe that Schiess had "implied to me how grateful he would be if you would cooperate" and that if Doe cooperated with the District it might be a way to "turn around" how the District had been treating her.

42. Shapiro said again that plaintiff "really did overstep her bounds and she really did say some things to you that caused you a lot [of] unnecessary upset." Shapiro told Doe that what plaintiff had shown her was not her personnel file but some "private notes" and that those notes either were not in Doe's files or would be removed.

43. When Doe expressed hesitancy about assisting the District after the way the District had treated her, Shapiro continued to ensure her that if she cooperated with the District her negative employment situation would improve and the District might "view [Doe] in an entirely different light."

44. When Doe asked Shapiro whether she really believed that her speaking to Benz to assist the District really would "make a difference," Shapiro

responded, "I do, I really do, otherwise I wouldn't have called you. There's somebody else I could call — You're not the only one she's [plaintiff] done this to," thereby continuing to assert to Doe that plaintiff had done something wrong by interviewing Doe and showing Doe her employment records.

45. When Doe asked Shapiro whether the District would be willing to "do any negotiations," Shapiro responded, "Well I think his [Schiess's] words were he'd be very, very grateful. I think you just have to leave it at that. I mean, I'm not, listen, I can't promise you a castle."

46. Still hesitant, Doe said she would get back to Shapiro by Friday (March 10) or Monday (March 13), and Shapiro responded, "Maybe by Thursday (March 9)." Shapiro thus knew that Benz was required to file a motion by March 10, 2006.

47. When Doe had not called Shapiro back by March 10, 2006, Shapiro called Doe on that day and told her that if she was going to speak to Benz, it was "today or never." She told Doe that she had spoken to Schiess again the night before and that Schiess said "for the first time" that he agreed with Shapiro about how difficult Doe's employment circumstances had been. Thus Shapiro sought to intensify the connection between Doe's employment situation improving and her speaking to Benz to assist the District in legal action against Burgess. Shapiro tied Doe's ability to look at and correct inaccurate information in her employment records to Doe's cooperation with the District in regard to an action against Burgess.

48. Shapiro then promised Doe that, after she spoke to Benz, she and Doe would meet with Schiess, review Doe's files, and "I think, you know, I think things might get better if we handle this thing right." Shapiro told Doe that if it were her (Shapiro), she would "do it" too, because it could only help Doe and not hurt her. When Doe responded that that was what she was hoping, Shapiro said, "It will. Trust me."

49. Having been set up by Shapiro to believe that plaintiff had somehow wronged her, and believing that her employment would improve if she met with Benz, Doe met with Benz the afternoon of March 10, 2006. Benz, too, tried valiantly to influence Doe to believe that plaintiff had lied to her and had solicited her.

50. At the outset of this meeting, Benz told Doe that a confidentiality order in place in 03-cv-6541 prevented plaintiff from talking about certain documents or sharing them. Benz did not disclose to Doe that she (Benz) already had agreed to [sic] plaintiff that the confidentiality order was not implicated by plaintiff's interviewing District employees or showing them their employment files. She told Doe that she and the District had been

"concerned from the beginning" based on "some prior history with" plaintiff that plaintiff would be "sharing information that she shouldn't and misrepresenting that information to people." She told Doe that it was her "understanding that some of the things that [plaintiff] may have told you and that's why I'm what I'm here to do is just to find out what she really did tell you and whether there are some things we need to be concerned about" and that plaintiff "may have implied things to you to try to scare you."

51. Benz questioned Doe thoroughly about plaintiff's investigatory interview with her, which is contrary to federal law governing discovery and contrary to attorney ethics rules pertaining to attorney work product. Doe clearly stated that she, not plaintiff, had concluded that the District was setting her up to be disciplined. Doe told Benz that she had been upset by what she saw in her employment files and that she asked plaintiff for legal advice. At no time did Doe state that plaintiff made any representations as to what was in the files.

52. During Benz's interview of Doe, Benz asked questions to determine whether plaintiff had solicited Doe. Doe told Benz that she had asked plaintiff for legal advice and that plaintiff had given her a range of options in response to that inquiry. Five times during this conversation, Doe denied that she had been solicited, pressured, or advised to sue the District:

Benz:   Did [plaintiff] suggest herself as a possible representative?

Doe :   She said you know, anybody such as herself, yes — but she didn't, she didn't push or anything, I mean she wanted —

* * *

Benz:   [T]here are certain circumstances in which an attorney can solicit clients and certain circumstances in which they are not permitted to do so, so I'm just asking for my —

Doe :   No, I don't think, I don't think she was, uh, looking to solicit, um, I think she wanted to make me aware of some of the stuff and, um —

Benz:   Did she say why she wanted to make you aware?

Doe:    Well she's also working on this other case and um she said there's a lot of parallels, I think, she didn't say that exactly but, you know she did ask me questions on the phone and stuff to help out with her case, I guess.

Benz:  [D]id she advise you that you had claims against the district that you should sue them for something —

Doe:   No, not at any time.

53. Benz continued to press Doe with questions about everything plaintiff discussed with Doe during their interview and asked Doe what plaintiff's "version" of plaintiff's client's story was. When Doe explained that, Benz proceeded to argue against plaintiff's client's claims, misrepresenting record evidence in the process.

54. Benz then asked Doe how her conversation with plaintiff ended, and Doe told Benz that plaintiff specifically had stated to Doe that, if plaintiff were her lawyer, she would not sue the District but would write a letter to the District.

55. Benz then asked Doe why plaintiff would write a letter when the issues with Doe's employment "been taken care of," implying that plaintiff had misrepresented to Doe that there were issues with her employment. She stated that she "just wondered why she [plaintiff] would write a letter if all the issues have been resolved." Doe responded that the issues have not been resolved.

56. Despite Doe's having exculpated plaintiff several times with respect to the issue about which Benz purportedly was interviewing her, *i.e.*, plaintiff's solicitation of Doe, Benz persisted in assuring Doe that she need not worry about what she saw in her employment files, she persisted in disparaging plaintiff to Doe, and she even advised Doe to get "a couple" of second legal opinions, more than implying that plaintiff was an untrustworthy lawyer who did not care about her clients but cared only about money.

Benz:  Because, yeah, again, my worry is that [plaintiff] is a lawyer, this is how she makes her money, and I, it bothers me to think that she would be meeting with people and scaring them into thinking that something terrible is going to happen to them, um, when really, you know, she's looking at those people and seeing dollar signs and not necessarily sticking up for those people.

* * *

Benz:  [B]ut get some second opinions, because I — I'm just worried that what [plaintiff] has done is taken documents that we gave so she can see that the district wasn't pursuing things like she thought they were and instead she's turned around and tried to use them to, to get clients.

57. When Doe asked Benz whether plaintiff had contacted other people, Benz responded,

> My understanding is that she has. I haven't talked to anyone else that she has talked to, but I've heard from people who've heard from people…and so now I'm just worried that is she out there calling people and you know, we were not there to say hey wait a minute that's not what that says, that's not why that was written here so, so those are my concerns.

58. Thus, Doe was the only person Benz spoke to about solicitation. Upon information and belief, that is because Doe had learned about and was upset by the District's machinations to set up her to be disciplined, making Doe the perfect candidate to unwittingly assist the District in framing plaintiff because she stood to benefit from having the offending employment records expunged or otherwise cleared up in exchange for her testimony. Benz and Shapiro planned to convince Doe of an alternate truth about plaintiff, to which Doe then unwittingly would testify.

59. Benz also told Doe that she had clerked for a federal judge and that that judge had suggested that she apply at defendant Harris Beach because he "knew all the attorneys there." The federal judge for whom Benz had clerked was Honorable Michael A. Telesca, who was the judge in 03-cv-6541.

60. Shortly after this interview, still on March 10, 2006, Benz phoned Doe, told her she had reviewed her employment files, and tried again to convince Doe that there was nothing negative in her employment file and that plaintiff had misrepresented to Doe what was in her file.

61. Benz drafted an affidavit for Doe's signature for use in supporting the motion Judge Feldrnan had instructed her to file. Benz's draft excluded all five of Doe's exculpatory statements in which Doe had exonerated plaintiff of any solicitation, pressure, or advice to sue the District.

62. Benz and Shapiro failed to disclose to Doe that the motion the District intended to bring against plaintiff would accuse plaintiff of wrongfully soliciting Doe and others and that Doe's affidavit would be used to support such an accusation, so Doe had no reason to question the exclusion of these statements from her affidavit. Benz told Doe only that her affidavit would be used in a motion to "clarify" the terms of an existing confidentiality order.

63. Benz knew or should have known that Doers statements, which Benz excluded from Doe's affidavit, were directly relevant to any claims of solicitation and that including them in Doe's affidavit would have ensured that Benz's motion seeking sanctions against plaintiff would be denied.

64. Doe tape recorded the five conversations she had with Shapiro and Benz on March 7 and 10, 2006 and gave copies of the recordings to plaintiff. Plaintiff listened to the recordings on March 11 and 12, 2006. Thus, plaintiff knew of Shapiro's and Benz's disparaging remarks to Doe about her and she knew that Doe had exonerated her from any solicitation.

65. On March 13, 2006, Benz filed a motion with the court alleging that plaintiff had solicited multiple employees using confidential District employment records and thus had violated ethics rules and abused discovery documents. Benz attached to her motion Doe's innocuous affidavit (which omitted the evidence that plaintiff had not solicited Doe) and an affidavit from Schiess that contained no evidence or mention of solicitation. There were no other affidavits and no evidence of solicitation submitted with the motion. Benz alleged again that the "confidential" source, whom she did not name in the motion, had said that plaintiff had solicited multiple employees.

66. Having failed to convince Doe that plaintiff had solicited her, on March 13, 2006, Shapiro mailed a grievance against plaintiff to the bar association. The grievance was dated March 8, 2006 - the day after Shapiro told Doe she already had filed a grievance based on "tons" of complaints about plaintiff from other teachers.

67. Upon information and belief, Shapiro's grievance, which subsequently was dismissed and closed for lack of evidence, was Benz's, Shapiro's, and Schiess's "back-up" plan in the event Doe would not buy, and thus testify to, their attempts to convince her that plaintiff had misled her about her employment and employment records and had solicited her.

68. Because Benz had filed her fraudulent motion under seal, plaintiff needed Benz's permission to show Doe the motion in order to prepare a defense to it. Plaintiff asked Benz for such permission, knowing that if Doe saw how her affidavit had been used, she would protest that she had told Benz that plaintiff had not solicited or pressured her.

69. Benz, who did not know about the tapes, refused to consent to plaintiff's showing Doe the motion, representing to plaintiff that it was not necessary to do so because everything she and Doe had discussed was set forth in Doe's affidavit. Plaintiff knew this representation to be a lie.

70. Benz's motion and Shapiro's grievance were designed to accomplish sanction against plaintiff to stop her from speaking to Doe further, to stop her from interviewing any other District employees who might have facts, as Doe did, that would advance plaintiff's claims in 03-cv-6541, and to remove plaintiff from representation in 03-cv-6541 if possible. Benz then lied to plaintiff about what she had discussed with Doe to prevent plaintiff from

being able to defend herself against Benz's unfounded and fraudulent accusations and to prevent the court from knowing about her fraudulent conduct.

71. When plaintiff tried to speak to Doe without revealing the contents of the motion, Doe refused on the ground that she feared retaliation in her employment. Doe's boyfriend, who was familiar with the facts, also refused to speak to plaintiff out of fear of retaliation against Doe.

72. At the May 4, 2006 oral argument of Benz's motion, Benz's supervising partner at defendant Harris Beach, Brian Laudadio, appeared and stated to the court that Harris Beach made a 'determination that there was no misconduct" and that it "believe[d] that Ms. Benz acted appropriately and that there was simply a - an unfounded accusation [by plaintiff]." Thus, Harris Beach acquiesced in and condoned Benz and its client's conduct when that conduct was brought to its attention.

73. In January 2006, after plaintiff had contacted some District employees asking them to contact her if they had certain information plaintiff sought with respect to 03-cv-6541, Shapiro sent District employees a letter in which she implied that plaintiff was "bothering" employees.

## STANDARDS OF LAW

In *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955 (May 21, 2007), the Supreme Court clarified the standard to be applied to a 12(b)(6) motion to dismiss:

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted).  *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*)

(footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 2007 WL 1717803 (2d Cir. Jun. 14, 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)   When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000).  On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co*., 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

## ANALYSIS OF FEDERAL CLAIMS

The Court will first analyze the motions with regard to Plaintiff's Federal claims. In paragraphs 92 through 104 of the complaint, Plaintiff raises four causes of action based on Federal law:

Count VIII – First Amendment;

Count IX – Retaliation under Section 504 of the Rehabilitation Act;

Count X – Retaliation under Title IX of the Education Amendments; and

Count XI – Civil Rights Act (Defendants "have violated, and conspired to violate, Section 504, Title IX, and plaintiff's right to free speech as guaranteed by the U.S. Constitution, First Amendment, all in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983").

***First Amendment Claims***

The First Amendment does not directly provide a basis for awarding damages to a plaintiff, but is usually enforced against a state actor through 42 U.S.C. § 1983. Consequently, the Court considers Count VIII and Count XI to raise one claim under § 1983.[2] To raise a claim under that statute, a plaintiff must allege the following:

> (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.

*Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993). In order to act under color of state law, a person must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Similarly, as is the case in the context of the Fourteenth Amendment's state action requirement, a deprivation of a federal or constitutional right is actionable pursuant to § 1983 when the deprivation was caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50.

> "It is well settled in . . . [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted). Personal involvement of a supervisory official may be established "by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the violation through a report or appeal, failed to

---

[2]During oral argument, Plaintiff conceded that Counts VIII and XI were the same.

-13-

remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (3) the [official[ was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating at constitutional acts were occurring." *Id.*

*Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246,254 (2d Cir. 2001).

### Benz & Harris Beach, PLLC

Benz, an attorney, and Harris Beach, a law firm, represented the Pittsford Central School District and Pittsford's Board of Education in the prior action. An attorney who represents a public client in litigation does not thereby become a state actor. *O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d. 413, 419 (S.D.N.Y. 2004). The complaint alleges nothing more than that Benz and her firm in the capacity of counsel for their clients in an employment discrimination lawsuit. Thus, neither is alleged to be a state actor.

### Pittsford Central School District, Board of Education of the Pittsford Central School District, & Schiess

These defendants argue that the First Amendment does not by itself provide a basis for a cause of action, and even if this claim were analyzed as a § 1983 claim, there is no basis for alleging liability against the District and Board of Education. The Court has already determined that the First Amendment claim is, in reality, a claim under § 1983. In that regard, Plaintiff, as indicated above, may not rely on the doctrine of *respondeat superior* to establish liability under § 1983. *Monell v. New York City Department of Social Services*, 436 U.S. at 691-96, but must show that a defendant was personally involved in a constitutional deprivation. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).

Here it is clear that the complaint does not allege a basis for liability against the school board or the school district.  Neither is alleged to have: participated directly in the

alleged constitutional deprivation; failed to remedy the violation after being informed of its occurrence; created a policy or custom under which the violation occurred; been grossly negligent in the supervision of subordinates who committed the violation or exhibited deliberate indifference to Plaintiff's rights.   Turning now to Schiess, Director of Human Resources for the District, he appears to concede that he is a state actor, liable to suit under § 1983. (*See* Pittsford Central School District, Board of Education of the Pittsford Central School District, & Schiess Mem. of Law at 18.)   As to Scheiss, Plaintiff alleges that correspondence was found in Doe's file between Doe's building principal and Schiess (Compl. ¶ 27.), and that Scheiss directed Shapiro to call Doe and cancel the conference scheduled between her and her building principal. (Compl. ¶ 32.) Schiess is also alleged to have disclosed to Benz, then the attorney for the District and Board, what Doe learned from the personnel file Plaintiff showed her. (Compl. ¶ 33.) Further, Schiess is alleged to have implied, at least from Shapiro's viewpoint, that he would be grateful for Doe's cooperation, which impression Shapiro allegedly shared with Doe. (Compl. ¶ 41.)

The Court determines that these allegations do not raise a plausible First Amendment claim against Schiess. Although they are attributed to a state actor, Schiess, they do not allege "that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." The allegations essentially show that Schiess was corresponding with Doe's building principal to build a case against Doe, and that once Schiess knew the correspondence had been shown to Doe, he expressed to Shapiro that he would be grateful for Doe's cooperation. They do not, however, implicate Plaintiff's First Amendment rights.

Now, therefore, all the First Amendment § 1983 claims against Pittsford Central School District, Board of Education of the Pittsford Central School District, and Schiess are dismissed.

### PDTA & Shapiro

Defendants Pittsford District Teacher's Association ("PDTA") and Shapiro also argue that Plaintiff's First Amendment claim must be dismissed against them, since the First Amendment does not permit monetary awards, and further, because the complaint does not allege that their actions actually deprived her of any rights. With regard to the § 1983 claim, Defendants argue that the complaint does not sufficiently plead they acted under color of state law.

Repeatedly mentioned above, as the Court has already determined, the First Amendment claim is actually one arising under § 1983. Generally, unions are not state actors pursuant to § 1983, although a "union may be alleged to have acted under the color of state law where it conspired with state officials in the challenged action." *Mehrhoff v. William Floyd Union Free Sch. Dist.*, No. 04-CV-3850 (JS) (MLO), 2007 U.S. Dist. LEXIS 94938 (E.D.N.Y. Dec. 28, 2007) (citations omitted). In the present complaint, Plaintiff alleges that Shapiro and Benz conspired to prevent Plaintiff from speaking to Doe again, or from speaking to any other District employee, and to interfere with plaintiff's ability to investigate and pursue her client's case in 03-cv-6541. Specifically, Plaintiff alleges that

> Benz's motion and Shapiro's grievance were designed to accomplish sanction against plaintiff to stop her from speaking to Doe further, to stop her from interviewing any other District employees who might have facts, as Doe did, that would advance plaintiff's claims in 03-cv-6541, and to remove plaintiff from representation in 03-cv-6541 if possible.

> When plaintiff tried to speak to Doe without revealing the contents of the motion, Doe refused on the ground that she feared retaliation in her

employment. Doe's boyfriend, who was familiar with the facts, also refused
to speak to plaintiff out of fear of retaliation against Doe.

(Compl. ¶¶ 70-71.) Plaintiff has alleged specific acts leading to difficulty in conducting

discovery for the underlying case in which she was representing a school employee suing

the school district. However, even taking all the allegations as true, Plaintiff does not plead

a constitutional claim under the First Amendment. The complaint does not show that she

was prevented from speaking with potential witnesses for her client, only that Defendants'

alleged acts made gathering evidence more difficult. Significantly, there is no allegation, that

as a result of the discovery issue, Plaintiff was unable to effectively represent her client.

Therefore, the Court concludes that the complaint does not raise a constitutional claim

against either Shapiro or the Union.

### Rehabilitation Act § 504 & Title IX of the Education Amendments

Plaintiff also brings retaliation claims against all the defendants pursuant to Section

504 of the  Rehabilitation Act, 29 U.S.C. § 794 (entitled "Nondiscrimination Under Federal

Grants and Programs), and Title IX of the Education Amendments, 20 U.S.C. § 1681

(entitled "Discrimination Based on Sex or Blindness"). She alleges that

> Defendants' conduct as described herein was intended to retaliate against
> plaintiff because of her assistance to and advocacy for a person who
> asserted her Section 504 rights had been violated and to prevent plaintiff
> for assisting and advocating for such rights in the future (Compl. ¶ 98)….

> Defendants' conduct as described herein was intended to retaliate against
> plaintiff because of her assistance to and advocacy for a person who
> asserted her Title IX rights had been violated and to prevent plaintiff for
> assisting and advocating for such rights in the future (Compl. ¶ 102).

(Compl. ¶¶ 98, 102.) Both statutes require that the aggrevied party allege he or she was

subjected to an adverse employment action. *AB v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D.

144, 153 (S.D.N.Y. 2004) (adverse employment action an element of retaliation claim under

Title IX); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (discussing elements of retaliation claim under Rehabilitation Act and Americans With Disabilities Act). Since Plaintiff has not plead that she suffered an adverse employment action as part of her retaliation claims as to any defendants, all such claims must be dismissed. Amendment of the complaint would be futile, since the factual allegations in the complaint make it clear that Plaintiff was not employed by any of the named defendants in this case.

Moreover, with respect to Harris Beach and Benz, the Court determines that an attorney's defense of a lawsuit on behalf of a client, alleged to have engaged in employment discrimination, does not constitute retaliation as a matter of law. Although it has been held that the bad faith filing of a lawsuit motivated by retaliation can be a basis for a retaliation claim under Title VII, *see Urquiola v. Linen Supermarket, Inc.*, No. 94-14-CIV-ORL-19, 1995 WL 266582 *1 (M.D. Fla. March 23, 1995); *EEOC v. Levi Strauss & Co.*, 515 F. Supp. 640, 643-44 (N.D. Ill. 1981); *EEOC v. Virginia Carolina Veneer Corp.*, 495 F. Supp. 775, 778 (W.D. Va. 1980), *appeal dismissed*, 652 F.2d 380 (4th Cir. 1981), the Court can find no authority to support Plaintiff's contention that she may sue the law firm that, or individual attorney who, defended the 03-cv-6541action under the circumstances as they are alleged in the complaint. For example, even the presentation of a frivolous affirmative defense will not support a retaliation claim. *Baker v. Summit Unlimited, Inc.*, 855 F. Supp. 375, 376-77 (N.D. Ga. 1994); *see also Maloney v. Rice*, No. 86 C 6026, 1988 WL 53175 *3 (N.D. Ill. May 16, 1988) (denying dismissal of affirmative defense that investigative actions were not First Amendment retaliation because done as pretrial preparation in plaintiff's discrimination action).

**STATE LAW CLAIMS**

Harris Beach and Benz argue in favor of the Court retaining supplemental jurisdiction over the state law claims even if, as is the situation here, the Court dismisses all the federal law claims. Although the Court might be able to render a decision in the claims against those defendants, the same is not as easily said with regard to the remaining defendants. No party has presented any authority for the Court to pick and choose over which litigants it will continue to exercise supplemental jurisdiction, while declining not to do so for other litigants. Furthermore, the state law claims predominate, and the action is still in its early stages. Consequently, it does not appear to the Court that judicial economy would be served by continuing to retain jurisdiction over the state law claims. Therefore, the Court, pursuant to 28 U.S.C. § 1367(c)(3), exercises its discretion to decline jurisdiction over the remaining state law claims.

**CONCLUSION**

Defendants' motions (Docket Nos. 9, 13 and 14) to dismiss the federal law claims against them are granted and the Court declines to exercise jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367. The Clerk is directed to close this case.

IT IS SO ORDERED.

Dated:   March 28, 2008
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J.  SIRAGUSA
United States District Judge